## Wenona Coal Co. v. Holmquist.

1. NEGLIGENCE—*Bumping Cars.*—A coal company had at its mine a chute at which about two and one-half cars were loaded daily with coal, and when the loading of a car was completed, it was the custom in order to move it away so as to make room for another car to "bump" the next car against it. *It was held,* that such a system of bumping an empty car against a loaded one with sufficient force to throw the loaded car along, was necessarily hazardous to the workmen engaged about the loaded car, if done without warning, and should only be exercised upon special warning or under rules affording an assurance of protection.

2. FELLOW-SERVANTS—*Who Are Not.*—Where two sets of workmen were engaged in a coal yard, one whose duty it was to switch the cars from place to place, and the other to load them, it not appearing that they came into contact with one another in their employment, or that the duty of one had any but a remote connection with the other, one set working under a foreman, and the other under the directions of a shipping clerk, *it was held,* that there was not that direct co-operation and mutual influence in their line of employment, between the switchmen and the car loaders, that must exist to create the relation of fellow-servants.

**Memorandum.**—Action for personal injuries. In the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Declaration in case; plea not guilty; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the October term, 1893, and affirmed. Opinion filed December 21, 1893.

The statement of facts is contained in the opinion of the court.

CRATTY BROS. & JARVIS and WILLIAMS & MACLAREN, attorneys for appellant.

GEO. WILLARD and W. E. MASON, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The judgment appealed from was recovered by the appellee in an action against the appellant for injuries received by the former while at work for the latter in its coal yards.

The accident happened while appellee was in the performance of his work, standing between a coal car which it

was his duty to assist in loading with coal, and the chute through which the coal was discharged into the car. The space between the car and the chute was narrow, only wide enough to admit a man moving sideways, and the appellee had gone in there for the purpose of clearing the chute, which had become clogged with coal, by working a chain attached to the slide in the throat of the chute. While he was in there another car was switched down on the same track and collided with the car next to which appellee was standing, and appellee was badly hurt.

The defense was, and is, that the injury resulted from the carelessness of the appellee in going into the space between the car and the chute for the purpose of unclogging the chute when there was another and a usual, safe and convenient, way of accomplishing it; that the injury was caused by the fellow-servants of appellee, and, in this court, that the damages awarded are excessive.

One method of reaching the chain used for raising the slide in the chute was, by leaning over and reaching down from the top of the car being loaded, and another was, by reaching around between the car and the chute to the chain, and still another was that adopted by appellee, of going in bodily between the car and the chute, and there working the chain.

It is in evidence that the car that was being loaded was blocked and the brakes set so that it could not move, while in that condition, without the application of some extraordinary force. Left to itself it was reasonably safe for a person to adopt either method for clearing a clog in the chute and there is evidence that under some circumstances it was the easiest way, to go in between the car and the chute, as appellee did. That it was customary for workmen to adopt either method, according to their judgment of the condition of the clog, or their own ideas of convenience, and that appellant knew that such was the custom, is apparent from the evidence.

Appellee himself testified that the first time he went to do that kind of work, Marland, the boss, told him to do it

in the way it was being done when the injury happened, and that he had seen the boss, himself, in there.

Marland denied having so told appellee, or having ever gone into the space between the car and the chute, but it was for the jury to say what the fact was.

The weight of the evidence establishes, we think, that the better way and the most usual one, was to reach down from the car being loaded and take hold of the chain, but it as clearly appears that the clearing of the chute was as practicable from either of the other indicated positions, and was reasonably safe under ordinary circumstances, and was resorted to whenever it was more convenient than to mount upon the car.

It is not claimed that, either by general rule of the yard, or by any special instruction, the appellee was at any time warned of the danger of going in between the car and the chute. There was no obvious danger in going there. Except for some extraneous cause operating to suddenly move the loading car, there was apparently no more danger in that position than there was from reaching down from the car and pulling the chain. It is not unreasonable to suppose that a person so reaching down might have as likely been thrown and injured by the powerful collision of another car with the one on which he was standing, as if he were in the position of the appellee at the time he was hurt. True, being on the car, a better opportunity for seeing the approach of a shunted car would exist, but there is nothing to show that such a peril was imminent.

From the usual manner of switching and shunting cars upon this side track, the appellee had no reason to anticipate the collision that occurred, and it is not claimed that he had any notice or warning of any kind of the approach of the colliding car.

We do not think that appellee was, under the circumstances, guilty of any such degree of negligence as would on that ground prevent a recovery.

Such being the employment of the appellee and his situation, what were the obligations of the appellant toward him?

It appears that on an average about two and one-half cars were loaded daily at this chute, and that when the loading of a car was completed, it was the custom, in order to move it away so as to make room for another car, to " bump " the next car against it and thus start it along.

Such a system of bumping an empty car against a loaded one with sufficient force to throw the loaded car along, was necessarily hazardous to the workmen engaged about the loaded car, if done without warning, and should only be exercised upon special warning or under rules affording an assurance of protection. In this instance it appears affirmatively that there were no rules upon the subject. Assuming that when a car had become loaded the workmen might, in the exercise of ordinary intelligence, knowing the custom to bump down against it the next car, be on the lookout for the collision to be occasioned by that car, and remove themselves to positions of safety, there is nothing in this record to show that the car about which appellee was then employed had yet received its load.

The inference is strongly to the contrary, or else it would not have been necessary to overcome the clogging of the chute so as to secure the flow of more coal into the car. The appellee had, therefore, no reason to expect at that time that any other car would be shunted down upon the car where he was at work, and, indeed, it appears that it was not intended by the men engaged in switching cars, that the approaching car should be driven upon that track and against the car in question, at that time.

The yard was crowded and in moving the cars about, the one that collided with the car being loaded, was started and left free to go upon that track and run upon it with the force that caused the accident. The evidence shows that there was a slight down grade from the point where the car was started upon the track in question to the chute, and that the force of gravity would assist a car moving in that direction.

A system that would permit such a result was, we think, very deficient in the matter of providing ordinary and nec-

essary safeguards to the lives and limbs of employes, and amply justified the charge of more than ordinary negligence against the appellant.

It was held in C. & N. W. Ry. Co. v. Goebel, 119 Ill. 515, that where a railway company places a loaded car upon a side track, to be there unloaded by the owners of the freight, and such owners or their servants, with the express or implied consent of the company, proceed to remove the freight, the company will have no right without special notice and warning, to run or back a train in upon the side track while such car is being unloaded; and that in such case, those engaged in unloading, although not permitted to disregard what comes within the range of their senses, may give their undivided attention to their work, and will be justified in assuming that the company will not molest them, or render their position hazardous, without such notice or warning.

The principle there held may, with propriety, be held to be applicable as between an employer and his servants.

But it is contended that the accident was due to the fault of one or more of the fellow-servants of appellee, and therefore appellant is not liable.

There were at least two sets of workmen engaged in the coal yard, one whose duty it was to switch the cars from place to place, and another set to load them, but it does not appear that they came into contact with one another in their employment, or that the duty of one had any but a remote connection with the other.

The appellee worked in the set that performed the loading, and was under a foreman named Marland, but those engaged in switching acted under the directions of Walker, a shipping clerk, who had charge of the filling of orders and selected and allotted the cars needed for the purpose.

Although it was necessary that cars should be furnished at the chute in order to provide work for those engaged in loading, there was no more co-operation between the switchmen and the loaders than if the cars had been supplied at the chute by the railway company over whose line they were to be hauled, instead of being owned and switched by the coal company.

It seems clear that there was not that direct co-operation and mutual influence in their line of employment, between the switchmen and the car loaders, that must exist to create the relation of fellow-servants, and thereby relieve the appellant.

The instructions read together, we think, fully and fairly presented the law of the case to the jury, and furnish as a whole, no ground for reversal. Willard v. Swansen, 126 Ill. 381.

There remains only the question of the amount of damages awarded.

Money compensation for injuries such as were received by the appellee, must in the nature of things, be an unsatisfactory standard of measurement, but it is the only one susceptible of application through the intervention of the courts.

A mere belief that more exact justice would have been accomplished by the awarding of a less sum, is insufficient to justify the reversal of a judgment.

Upon the whole record the judgment should be affirmed, and it will be so done.